# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| FARZANA K., M.D., | ) | |
| Individually and as next | ) | |
| friend of S.K. a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:05-CV-266 |
| | ) | |
| INDIANA DEPARTMENT OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION & ORDER

This matter is before the Court on: (1) Defendants', School Town of Munster, West Lake Special Education Cooperative, William Pfister and Marlene Sledz, Motion to Dismiss, filed on August 3, 2005; and (2) Motion to Dismiss, filed by Defendant, Indiana Department of Education, on August 29, 2003.

For the reasons set forth below, Defendants', School Town of Munster, West Lake Special Education Cooperative, William Pfister and Marlene Sledz, Motion to Dismiss (DE # 7) is **GRANTED**.  Accordingly, School Town of Munster, West Lake Special Education Cooperative, William Pfister and Marlene Sledz are **DISMISSED** from this case without prejudice.

Defendant, Indiana Department of Education's, Motion to Dismiss (DE# 14) is **GRANTED IN PART AND DENIED IN PART**.  To the extent, IDOE

seeks dismissal of Count XII, the motion is **DENIED**.  In all other respects, however, the motion is **GRANTED**.

As a result, the only remaining claim is Count XII against the IDOE.

BACKGROUND

The Court is familiar with this case as it is now here for a second time.  Initially, on October 14, 2004, the Plaintiff, Farzana K., M.D., Individually and as next friend of S.K., a minor, brought suit against Defendants, School Town of Munster, West Lake Special Education Cooperative, William Pfister, in his official capacity as Superintendent of School Town of Munster, and Marlene Sledz, in her official capacity as the Director of the West Lake Special Education Cooperative, in Case No. 2:04-CV-425.  In that case, Plaintiff claimed Defendants were depriving her minor son, S.K., of a free appropriate public education ("FAPE"), in violation of the Individuals with Disabilities Education Act ("IDEA") and other federal statutes, and were also violating a settlement agreement ("Settlement Agreement") entered into between the parties on March 15, 2004.  Plaintiff also filed a motion for preliminary and permanent injunction, seeking, among other things, this Court to order Defendants to transition her son, a twelve year old with autism, from his current residential placement in Kansas to Indiana, pursuant to the Settlement Agreement. On October 27, 2004, the Court issued an Order denying Plaintiff's attempt at securing an injunction.  The Court found that it lacked

-2-

subject matter jurisdiction due to Plaintiff failing to exhaust her administrative remedies under the IDEA.  Then, on December 7, 2004, the Court found that due to Plaintiff's failure to exhaust administrative remedies, it lacked jurisdiction over the entire case and dismissed Plaintiff's Complaint.  The Clerk was ordered to dismiss the Complaint without prejudice, and the Plaintiff was granted leave to refile.  Accordingly, Case No. 2:04-CV-425 was closed.

Subsequently, an administrative proceeding took place and, on March 7, 2004, Independent Hearing Officer ("IHO"), Joseph McKinney, issued his decision.  Plaintiff appealed the IHO's decision to the Indiana Board of Special Education Appeals ("BSEA"), which serves as a second tier of the administrative process for reviewing IDEA due process claims in Indiana.  The BSEA issued its Findings, Conclusions and Orders on June 1, 2005. (Complaint, ¶ 92.)  In its decision, the BSEA included a notice of right to appeal pursuant to 511 IAC 7-30-4(n) and Indiana Code section 4-21.5-5-5, which indicated that any party may appeal to a state or federal court with jurisdiction within 30 calendar days from the date the BSEA's decision is received by the party.  (Ex. B, p. 32.)  Plaintiff received the BSEA's decision on June 6, 2005.  (Cmplt. ¶ 91.)

On July 6, 2005, Plaintiff attempted to electronically file an "Amended Complaint" in Case No. 2:04-CV-425.  (Case No. 2:04-CV-425, DE#'s 25-32)  However, the Clerk of the Court informed Plaintiff that Case No. 2:04-CV-425 was terminated and the Complaint would have to

be filed in a separate, new case.  (Case No. 2:04-CV-425, DE# 33)  On
July 8, 2005, Plaintiff filed a 13-count Complaint in this case.
Along with the Complaint, Plaintiff filed a motion for leave to file
the Complaint instanter.  In the motion for leave, Plaintiff explained
that she was under the belief that the Court's December 7, 2004,
order, granted her leave to file an amended complaint in Case No.
2:04-CV-425 after exhausting her administrative procedures.  Plaintiff
sought for the July 6, 2005, Amended Complaint, filed in Case. No.
2:04-CV-425, to be filed instanter in this action so that the this
case would be deemed opened as of July 6, 2005.  Magistrate Judge
Rodovich denied the motion for leave to file instanter stating that
it is "not necessary for the plaintiff to request permission to file
a complaint in a new case."  (July 15, 2005 Order, DE #6)

Defendants have filed their respective motions based primarily
on Plaintiff's failure to timely file her petition for judicial review
of the administrative proceedings.  These motions are fully briefed
and ripe for adjudication.


DISCUSSION

For the purpose of analyzing Defendants' Rule 12(b)(1) claim, the
following standards apply.  Pursuant to Federal Rule of Civil
Procedure 12(b)(1), a defendant may move to dismiss claims over which
the federal court lacks subject matter jurisdiction.  Jurisdiction is
the "power to decide" and must be conferred upon a federal court.  *In*

-4-

*re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir.
1986).  When jurisdictional allegations are questioned, the plaintiff
has the burden of proving that the jurisdiction requirements have been
met.  *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th
Cir. 1987).  In reviewing a Rule 12(b)(1) motion to dismiss, the Court
may look beyond the complaint and review any extraneous evidence
submitted by the parties to determine whether subject matter
jurisdiction exists.  *United Transp. Union v. Gateway Western R.R.
Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

     To the extent Defendants' claims are under Rule 12(b)(6), the
Court will apply the following guidelines.  The purpose of a motion
to dismiss is to test the legal sufficiency of the complaint, not to
decide the merits.  *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892
F.2d 583, 586 (7th Cir. 1989).  In determining the propriety of
dismissal under Federal Rule of Civil Procedure 12(b)(6), the court
must accept all facts alleged in the complaint as true and draw all
reasonable inferences in the light most favorable to the plaintiff.
*Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A court may
dismiss a complaint only if it appears beyond doubt the plaintiff can
prove no set of facts that would entitle her to relief.  *Conley v.
Gibson*, 355 U.S. 41, 45-46 (1957).  Further, a court must "construe
pleadings liberally, and mere vagueness or lack of detail does not
constitute sufficient grounds for a motion to dismiss."  *Strauss v.
City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).  A complaint need

-5-

not plead law or be tied to one legal theory. *LaPorte County Republican Cent. Comm. v. Board of Comm'rs of the County of LaPorte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)).  A complaint may not be dismissed just because it omits factual allegations, but it may be dismissed when the plaintiff makes clear that she does not plan to prove an essential element of her case.  *Id.*

IDEA

The IDEA protects rights of children with disabilities by providing a "free and appropriate education that emphasizes special education and related services designed to meet their unique needs . . . [and] ensure[s] that the rights of children with disabilities and parents of such children are protected."  20 U.S.C. § 1400(d)(1)(A) and (B).  "To achieve these objectives, the IDEA's extensive system of procedural safeguards provides parents with the opportunity both to fully participate in all decisions concerning their child's education and to obtain administrative and judicial review of any decision with which they do not agree."  *Deveaux v. Vallas*, No. 01C14223, 2001 WL 699891, at *3 (N.D. Ill. June 21, 2001)(citing *Honig v. Doe*, 484 U.S. 305, 308 (1988)).

Section 1415(b)(6) guarantees parents "an opportunity to present complaints with respect to any matter relating to the . . . educational placement of the child, or the provision of a free

appropriate public education to such child."  Once a parent has filed
a complaint, they are entitled to an "impartial due process hearing"
conducted by a local or state educational agency.  20 U.S.C. § 1415
(f).  If they are dissatisfied with the decision, section 1415(g)
provides an opportunity to appeal to a state educational agency if the
original hearing took place at the local or regional level.  Finally,
section 1415(i)(2) provides for a civil action, allowing "[a]ny party
aggrieved by the findings and decision" of the state administrative
hearing to bring an action in "any State court of competent
jurisdiction or in a district court of the United States without
regard to the amount in controversy."

In Indiana, this administrative process is governed by Article
7 of the Indiana Administrative Code, 511 IAC 7-17-1, *et seq.*, and the
Administrative Orders and Procedures Act, Ind. Code section 4-21.5-1-1
et seq.  In accordance with the IDEA, Indiana's administrative scheme
provides for an impartial due process hearing when there is a dispute
regarding a FAPE.  511 IAC 7-30-3(i).  Due process hearings are to be
conducted and a final decision reached by the IHO with a copy of that
decision mailed via certified mail, return receipt requested.  511 IAC
7-30-3(w).  Thereafter, any party involved shall have 30 days from the
date of the IHO's written decision to initiate an appeal with the
BSEA.  511 IAC 7-30-3(x); 511 IAC 7-30-4.

Article 7 provides that if a party disagrees with the BSEA's
decision, it may appeal to a civil court with jurisdiction and

pursuant to Indiana Code section 2-21.5-5-5.  511 IAC 7-30-4(n).
According to section 2-21.5-5-5, a petition for judicial review of the
BSEA's decision must be filed within thirty days after service of
notice of the agency action at issue.  Further, "although § 4-21.5-5-5
does not expressly state that a petitioner must file a verified
petition within thirty days, it is clear from reviewing the statute
as a whole that a party must do so."  *Hoosier Environmental Council
v. Department of Natural Resources*, 673 N.E.2d 811 (Ind. Ct. App.
1997); Ind. Code § 4-21.5-5-7(b).  Notably, a party who fails to
timely file a verified petition within the aforementioned period
waives her right to judicial review.  Ind. Code § 4-21.5-5-4(b)(1).
The Indiana legislature has mandated that these statutory requirements
are not merely prerequisites to filing suit but, rather,
jurisdictional.  *See Comm'r, Indiana Dep't of Envtl. Mgmt. v.
Bethlehem Steel Corp.*, 703 N.E.2d 680, 682 (Ind. Ct. App. 1998)(noting
that a trial court's jurisdiction "may not be invoked until the
plaintiff [has] complied with the statutorily provided procedures.");
*see also Indiana Dep't of Envtl. Mgmt. v. Jennings Northwest Reg'l
Utils.*, 760 N.E.2d 184, 187 (Ind. Ct. App. 2001); *Bowman v. Indiana
State Bd. of Nursing*, 663 N.E.2d 1217, 1219 (Ind. Ct. App. 1996).
Thus, if a party does not file a verified petition for judicial review
within thirty days after the BSEA's decision was received, the
reviewing court is deprived of jurisdiction.  *See Kemp v. Family and
Soc. Servs.*, 693 N.E.2d 641, 642-43 (Ind. Ct. App. 1998).

-8-

Generally, a plaintiff cannot bring a federal lawsuit under the IDEA or any analogous cause of action unless she first exhausts her state administrative remedies.  20 U.S.C. § 1415(i)(2).  The IDEA contains a specific exhaustion requirement providing that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Requiring the exhaustion of administrative remedies as a precursor to filing suit furthers several legitimate policies: (1) to permit an agency to exercise its discretion and expertise; (2) to develop technical issues and a factual record prior to judicial review; (3) to prevent circumvention of agency procedures; and (4) to avoid unnecessary judicial review by allowing agencies to correct errors. *Bills v. Hommer Consol. School Dist. No. 33-C*, 959 F. Supp. 507, 511 (N.D. Ill. 1997)(citations omitted).

With these principles in mind, the Court will turn to the instant motions and examine the viability of each of Plaintiff's 13 claims.

-9-

<u>Counts I-IX</u>

Counts I-IX of Plaintiff's Complaint explicitly seek judicial review of the IHO and BSEA's administrative decisions under the IDEA. Defendants argue that because the Complaint was not filed in this case until July 8, 2005, dismissal is appropriate.  Plaintiff concedes that the deadline to file an appeal of the BSEA's decision with an appropriate court was July 6, 2005.  (Motion to file Instanter, ¶ 9.) Nevertheless, Plaintiff sets forth several theories in support of her position that the attempted June 6, 2005, filing, in Case No.: 2:-04-CV-425, satisfied the 30-day deadline in which to seek judicial review.

First, Plaintiff claims that the electronic filing system rejected her June 6 filing in error because, pursuant to Federal Rule of Civil Procedure 5(e), "[r]egardless how the appeal technically should have been filed, the Clerk was required to have accepted the pleading." (Pl.'s Response, DE #11, p. 4.)  To support this position, Plaintiff relies upon *Phoenix Global Ventures, LLC v. Phoenix Hotel Assoc., Ltd.*, No. 04 Civ 4991RJH, 2004 WL 2360033 (Oct. 19, 2004, S.D. N.Y.).  *Phoenix* concerned a plaintiff filing a Notice of Removal that was initially accepted by the ECF system, but then rejected because an unacceptable hearing date had been entered.  Id. at *2.  The district court found "that it would be unduly harsh to penalize Phoenix Global for the electronic communications that apparently broke down while processing the motion . . .."  Id. at *4.  Simply, the

-10-

court found the rejection of the filing to be a "technical snafu" with the electronic filing system, and deemed the Notice of Removal filed on the date of its submission. *Id.* Plaintiff would like this Court to follow *Phoenix's* result and deem her Complaint filed on the date of the Amended Complaint's submission.  However, as the reason for the untimely filing here was not due to any sort of technical snafu but, instead, the fault of the Plaintiff's own intentional conduct, *Phoenix* is not instructive.  Similarly, Plaintiff's reliance on Rule 5(e) is misplaced.  While it is true that the Clerk cannot refuse to accept for filing any paper solely because it is not presented in proper form, Rule 5(e) does not forbid the Clerk or the electronic filing system to refuse to accept for filing a party's attempts to file a document in a closed case.  Plaintiff fails to present any citations to legal authority that would suggest otherwise.

Second, Plaintiff argues that if filing in the 2:04-CV-425 case was an error, it caused no prejudice to Defendants because the subsequent filing in this case is essentially identical.  Therefore, Plaintiff opines, the July 8, 2005, Complaint should be deemed timely. Even assuming the untimely filing was not prejudicial, that alone is insufficient to allow Plaintiff to file her Complaint for judicial review past the allotted thirty days.  Indeed, basing the timeliness of filings on prejudicial effect alone would virtually render statutes of limitations meaningless.

Third, Plaintiff proffers that would be unduly harsh to dismiss

this case based upon a technical error, such as filing a pleading under the incorrect cause number.  In fact, Plaintiff states that, "[i]t would be an abuse of discretion for this Court to dismiss Plaintiff's Complaint based upon a technical error that prejudices no party in this case, and when there is no substantive difference between the Complaint and Amended Complaint."  (Pl.'s Resp., DE #11, p. 6.)  In support of this argument, Plaintiff relies on *Nicholson Air Services, Inc. v. United States*, 686 F.Supp. 538 (1988) and *Woods v. Indiana Univ. - Purdue Univ. at Indianapolis*, 996 F.2d 880, 882 (7th Cir. 1993).  However, those cases concern a district court allowing a plaintiff to amend pleadings under Rules 15 and 17, after an action has been timely filed, due to the plaintiff naming the wrong defendant.  Plaintiff fails to show how such an argument can be extrapolated and applied to the case at hand — extending the time to file a complaint.  *Woods*, 996 F.2d at 882 ("Once an action has been timely filed, fairness militates against a limitations defense to an opposing party who knows of the action within the required time frame – even though that party is named as a defendant only later, in an amendment that arises out of the same conduct, transaction or occurrence addressed in the original pleading."); *Nicholson*, 686 F. Supp. at 539 ("That principle [in Rule 17]– that amendment should be permitted to save from a limitations bar a claim technically owned by an insurer as subrogee which had been initially asserted by the insured– is directly applicable here.").

-12-

Next, Plaintiff argues that because she made a good faith error in filing in the wrong cause number, equitable tolling should apply. The Seventh Circuit has taught that equitable tolling excuses an untimely filing when "[e]xtraordinary circumstances far beyond the litigant's control . . . prevented timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Not surprisingly, this Circuit as well as many others have held that attorney negligence is not grounds for equitable tolling. *See Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Ford v. Hubbard*, 305 F.3d 875, 890 (9th Cir. 2002); *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000). Plaintiff's failed attempt at filing an Amended Complaint in a closed case on the final day of the applicable statute of limitations constitutes attorney negligence and, therefore, can not be grounds for equitable tolling.[1]

---

[1]Plaintiff claims that attempting to file in a closed case is analogous to filing in the wrong court. This an unconvincing analogy. The doctrine of equitable tolling has been applied where a plaintiff, in good faith, has brought an action in federal court within the statute of limitations, but it fails for diversity of jurisdiction. In such an instance, the statute of limitations has been tolled with the filing of federal suit for purposes of determining whether a subsequent state action involving the same parties and the same claims is brought within the statute of limitations. *See e.g. Torres v. Parkview Foods*, 468 N.E.2d 580, 583 (Ind. Ct. App. 1984). Not only is that scenario distinguishable, but the Seventh Circuit has intimated that filing in the wrong forum does not justify equitable

Plaintiff next sets forth that the filing of the Complaint in this case should relate back in time to the Amended Complaint. However, as the Amended Complaint was never properly filed, there is nothing for the Complaint to relate back to.  Indeed, "[w]here the time limit for filing a new claim has passed, Rule 15 (c) allows the amended pleading to relate back to the date of the original complaint if the claim arises out of the same conduct, transaction or occurrence." *Disch v. Rasmussen*, 417 F.3d 769, 776 (7th Cir. 2005). However, to benefit from Rule 15(c), the original complaint must have been timely filed. *Williams v. Lampe*, 399 F.3d 867 (7th Cir. 2005). That is the problem here.  The Amended Complaint was never properly filed.  Therefore, the July 8, 2005, Complaint, has nothing to relate back to.

Finally, Plaintiff argues that this entire line of argument regarding her missing the 30 day deadline is specious because the IDEA's amendment, which took effect July 1, 2005, now allows her ninety days to appeal the administrative decision.  Thus, Plaintiff claims that she had an additional sixty days to file her claim.  The amendment at issue specifies that "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such

---

tolling. *Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) (citing *Johnson v. McCaughtey*, 265 F.3d 559 (7th Cir. 2001)).

-14-

time as the State law allows." 20 U.S.C. § 1415(i)(2)(B). Plaintiff does not get the benefit of this 90-day limitation period.

To start, nowhere do the 2005 amendments state that they apply retroactively. Notably, the 1997 amendments to the IDEA did not state they applied retroactively, and courts addressing those amendments found they applied prospectively only. *See Heather S. v. Wisconsin*, 125 F.3d 1045, 1062 (7th Cir. 1997); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 n.1 (5th Cir. 1997). That approach was consistent with the Supreme Court's invocation of the "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence." *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997). Consistent with that approach, the Court finds the 2005 Amendments do not apply retroactively and, therefore, the thirty day limitation period applies.[2]

In sum, Plaintiff was required to file an appeal the BSEA's decision on or before July 6, 2005, which she failed to do. Although the Court duly notes Plaintiff's arguments in the context of this uncommon scenario, it is not persuaded that any of the arguments are sufficient to alter either the statute of limitations or the date the Complaint was deemed filed in this case. Accordingly, her Complaint, filed July 8, 2005, is untimely. However, this is not Plaintiff's

---

[2]This is without consequence. Because Indiana has a 30 day statute of limitations for all appeals taken from the Board of Special Educations Appeals, Ind. Code section 2021.5-5-5 and 511 I.A.C. 7-30-4(n), the new 90 day statute would be inapplicable.

only problem.

Aside from untimeliness, the Court finds another problem with Plaintiff's instant attempt at seeking judicial review. The Complaint is not verified, as required by Indiana law. *See Kemp*, 693 N.E.2d at 643. Nowhere in the Complaint does anyone confirm the "correctness, truth or authenticity, by affidavit, oath or deposition." *Id.* (defining verification via BLACK'S LAW DICTIONARY 1561 (6th ed. 1990)). Instead, Plaintiff's attorney merely affixed her signature after the closing, "Respectfully Submitted." The court in *Kemp* squarely rejected this as being sufficient to constitute verification because "the attorney's signature does not implicitly subject the attorney to the penalties for perjury, the gravamen of the verification requirement. *Id.*

In Indiana, a party's failure to verify a petition or complaint seeking judicial review of an administrative decision deprives a court of jurisdiction to provide such judicial review.[3] *Id.* (citing *Medical Licensing Bd. Of Ind. v. Provisor*, 678 N.E.2d 814, 817 (Ind. Ct. App. 1997); and *Kaminsky v. Medical Licensing Bd. Of Ind.*, 511 N.E.2d 492,

---

[3]No party addressed Plaintiff's failure to file a verified petition. However, as Indiana's requirements that all petitions for judicial review be verified, and that failure to verify deprives the court of jurisdiction, this issue can be raised by the court *sua sponte*. *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte*, they must."); *see also Wingerter v. Chester Quarry Co.* 185 F.3d 657, 660 (7th Cir. 1998) (holding that courts have the responsibility to examine jurisdiction, even if the parties fail to).

-16-

497 (Ind. Ct. App. 1987)).   Accordingly, this Court is without
jurisdiction to consider Counts I through IX of Plaintiff's Complaint.


    Count X

    In Count X, Plaintiff seeks to reform the Settlement Agreement
due to the alleged mutual mistake of the school and the parent.  This
mutual mistake came to be known, Plaintiff claims, through testimony
at the administrative hearings.  Specifically, Plaintiff claims that,
when asked about the intent of the Settlement Agreement at the
administrative hearing, Marlene Sledz testified that the "the School
must provide the services and placement on a child's IEP regardless
of funding, and that the phrase that placements were contingent on
approval of the IDOE, was meaningless." (Cmplt., ¶ 156.)  Based upon
Marlene Sledz' comments, Plaintiff seeks the Court to review the
administrative decision.  (Cmplt., p. 32, nos. 1-6.) Alternatively,
Plaintiff seeks "the Court reform the Settlement Agreement such that
the School is responsible for providing S.K. with the placement and
services described herein, with no contingencies as to funding[.]"
(Cmplt., p. 32, no. 7.)

    In Case No. 2:04-CV-425, the Court explained that the Plaintiff
was required to first exhaust her administrative remedies under the
IDEA before filing suit with regard to the Settlement Agreement.
(Oct. 27, 2004, Order in Case No. 2:04-CV-425, p. 13-14.)   The
Settlement Agreement was subsequently voided by the BSEA. (Cmplt., ex.

B, p. 30, ¶ 6.)  Plaintiff now seeks judicial review of the Settlement Agreement in relation to the facts that were uncovered during the administrative hearings.    However, as the Court is without jurisdiction to review the administrative hearings, the Court is without jurisdiction to entertain this claim as well.  *See W.L.G. v. Houston County Bd. Of Educ.*, 975 F. Supp. 1317, 1327-29 (M.D. Ala. 1997)(ruling claim that school board had failed to comply with settlement agreement was essentially a "complaint," which, under the IDEA, should first be presented in a due-process hearing); *Steward v. Hillsboro Sch. Dist.* No. 1J, No. CV 00-835-AS, 2001 WL 34047100, at *4 (D. Or. Mar. 1, 2001)(finding claim of breach of settlement agreement by school district "must first be presented to the appropriate administrative body.").

COUNT XI

Plaintiff has brought Count XI against the IDOE for violating the IDEA.  The IDOE is generally required to ensure that every Indiana child with a disability receives a FAPE, consistent with his IEP, and is required to ensure that local school systems carry out IDEA mandates.  According to the allegations, the school cooperative held a case conference meeting on July 13, 2004, regarding S.K. and submitted an IEP and Community Supported and Residential Services Application to the IDOE.  The submitted IEP required that S.K. be educated in a supported living arrangement in his home and community.

-18-

However, Plaintiff alleges that the "IDOE allowed S.K.'s July 13, 2004 IEP and Application for Community Supported and Residential Services to be delayed and then to not be enforced for a year, from July 2004 to now." (Cmplt, ¶ 165.) Simply, Plaintiff alleges IDOE did nothing to ensure that S.K. received the benefit of the services and placement described in the July 13, 2004 IEP and Application.

IDOE seeks dismissal of this claim because Plaintiff failed to exhaust her administrative remedies in this respect. It is true that exhausting administrative remedies is generally a prerequisite for filing suit under the IDEA. However, parents may bypass the [IDEA] administrative process where exhaustion would be futile . . . ." *Honig v. Doe*, 484 U.S. 305, 327 (1988). "A finding of futility usually requires exceptional circumstances, for example, allegations of a systemic failure and a request for systemwide reforms. At a minimum, plaintiffs must demonstrate that school officials repeatedly violated procedural safeguards and ignored parents' requests for help." *Kubistal v. Hirsch*, No. 98 C 3838, 1999 WL 90625 at *6 (Feb. 9, 1999, N.D. Ill.)(citations omitted).

Relying on *Bray by Bray v. Hobart City School Corp.*, 818 F. Supp. 1226 (N.D. Ind. 1993), Plaintiff contends that exhaustion here would be futile because she is challenging the IDOE's application review process. In *Bray*, the Brays were challenging the validity of the application review procedure as a whole. There, Magistrate Judge Rodovich found that the hearing officer "did not have the authority

-19-

to determine that the application review process is illegal, nor would his decision bind the State." *Id*. at 1233.  Consequently, it was held that exhaustion would be futile.  *Id*.

Plaintiff's reliance on *Bray* is misplaced, however, as this case presents a far different scenario than presented there.  Unlike the Plaintiff in *Bray*, it is clear that Plaintiff is not challenging the IDOE's application review procedure as a whole.  Nor is Plaintiff alleging a systematic failure of the application review process.  In fact, Plaintiff does not even allege that the IDOE repeatedly violated procedural safeguards or ignored parents' requests for help.  Upon review of the complaint, it is evident Plaintiff merely complains of the IDOE's delay in ruling on her son's application in this case.  As Plaintiff is only alleging that the IDOE delayed ruling on her son's application, Plaintiff must exhaust her administrative remedies as to this issue before seeking judicial review, which she did not do.  Therefore, the Court is without jurisdiction to entertain this claim.

COUNT XII

Like Count XI, Count XII is brought against only the IDOE.  In Count XII, Plaintiff alleges "IDOE has not established the interagency coordination required by IDEA to ensure disabled children receive needed services through various Indiana agencies." (Cmplt, ¶ 174.) Title 28 U.S.C. section 1412(a)(12) does require Indiana to enact interagency coordination to ensure the delivery of services that are

necessary for ensuring a free appropriate education to children with disabilities.  Nevertheless, IDOE argues that Plaintiff was required to exhaust her administrative remedies as to this claim – which she did not do –  and, therefore, this count should be dismissed.

In support of its position, IDOE relies on *Weyrick v. New Albany-Floyd County Consol. School Corp.*, No. 4:03-CV-0095, 2004 WL 3059793 (Dec. 23, 2004, S.D. Ind.), which stated that "[p]hrasing allegations as a challenge to broad policies or systematic deficiencies, rather than as a challenge to an individualized education plan, or lack of it, is not sufficient to trigger an exception to the IDEA's exhaustion requirement."  *Id*. at *18.  IDOE's reliance on the quoted language in *Weyrick* is misplaced.  *Weyrick* was decided in the context of a motion for summary judgment.  In the quoted portions of *Weyrick* that IDOE relies upon, the court was explaining that allegations of systemic deficiencies could not survive summary judgment and the plaintiff was required to come forward with affirmative proof of systematic defects, which he failed to do.  This is far different than the scenario presented here, in the context of a motion to dismiss.  At this stage, allegations of systemic deficiencies are enough to survive a motion to dismiss.  *Kubistal*, 1999 WL 90625 at *6; *Ciresoli v. M.S.A.D. No. 22*, 901 F. Supp. 378, 387-88 (D. Maine 1995)("Plaintiff's claim, that the Department of Education violated the IDEA by failing to implement interagency agreements, alleges a structural or systematic failure for which an administrative remedy would be inadequate.").  Therefore,

IDOE's Motion to Dismiss Count XII is **DENIED**.


COUNT XIII

In Count XIII, Plaintiff alleges Defendants' failed to satisfy their obligations under the Settlement Agreement to provide S.K. a FAPE and this, Plaintiff alleges, violated her and S.K.'s rights under section 1983.  As a threshold matter, it must again be pointed out that Plaintiff was first required to make her arguments concerning the underlying Settlement Agreement and any IDEA claims during administrative review.  Plaintiff's failure to file a timely, verified complaint foreclosed not only her right to seek judicial review on the IDEA claims, but also those parallel claims under section 1983. *Charlie F.*, 98 F.3d at 991 (interpreting section 1415(l) of the IDEA to mean that "any pupil who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute."); *see also McGraw v. Board of Educ. Of Montgomery County*, 952 F. Supp. 248, 253-54 (D. Md. 1997)(holding the IDEA makes clear that a plaintiff cannot circumvent the IDEA's exhaustion requirement by filing parallel claims under sections 504 or 1983). Accordingly, the Court is without jurisdiction to entertain this claim.


REMAINING CLAIMS

Although not explicitly mentioned in any individual count,

Plaintiff indicated that her Complaint is not only brought under the IDEA, but she also appeals the IHO and BSEA's decisions pursuant to the Americans with Disabilities Act, 42 U.S.C. section 12101, *et seq.*, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. section 794, *et seq.* (Cmplt. ¶ 5.)  The Seventh Circuit has interpreted section 1415(l) to mean that "any pupil who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute. *Charlie F.*, 98 F.3d at 991. Plaintiff must therefore exhaust her administrative remedies under the IDEA before she may raise a claim that section 504 was violated, or that section 1983 was violated. *See McGraw*, 952 F. Supp. at 253-54 (holding the IDEA makes clear that a plaintiff cannot circumvent the IDEA's exhaustion requirement by filing parallel claims under sections 504 or 1983); *Doe v. Eagle-Union Cmty. Sch. Corp.*, 101 F. Supp. 2d 707, 718 (S.D. Ind. 2000)("a plaintiff must exhaust her administrative remedies under the IDEA before she may raise a claim that section 504 was violated."); *Brown v. Metropolitan Sch. Dist. Of Lawrence Township*, 945 F. Supp. 1202 (S.D. Ind. 1996)(dismissing for lack of subject matter jurisdiction for failure to exhaust administrative remedies in case alleging violation of the IDEA and section 504). Because Plaintiff's ADA and Rehabilitation Act claims are identical to her claim under the IDEA, this rule clearly requires the Plaintiff to pursue the administrative relief set forth in the IDEA before litigating these claims.  As set forth above, Plaintiff waived

-23-

judicial review of the administrative process and, therefore, the Court is without subject matter jurisdiction to entertain these claims.

CONCLUSION

For the reasons set forth above, Defendants', School Town of Munster, West Lake Special Education Cooperative, William Pfister and Marlene Sledz, Motion to Dismiss (DE # 7) is **GRANTED**.  Accordingly, School Town of Munster, West Lake Special Education Cooperative, William Pfister and Marlene Sledz are **DISMISSED** from this case without prejudice.

Defendant, Indiana Department of Education's, Motion to Dismiss (DE# 14) is **GRANTED IN PART AND DENIED IN PART**.  To the extent, IDOE seeks dismissal of Count XII, the motion is **DENIED**.  In all other respects, however, the motion is **GRANTED**.

As a result, the only remaining claim is Count XII against IDOE.

DATED:  December 20, 2005          /s/RUDY LOZANO, Judge
                                   **United States District Court**

-24-