UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FARZANA K., individually and as next friend of SK, a minor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 2:05-CV-266 JVB<br>) |
| INDIANA DEPARTMENT OF EDUCATION; SCHOOL TOWN OF MUNSTER; WEST LAKE SPECIAL EDUCATION COOPERATIVE; WILLIAM PFISTER, in his official capacity as Superintendent of the School Town of Munster; and MARLENE SLEDZ, in her official capacity as the Director of the West Lake Special Education Cooperative; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

# OPINION AND ORDER

Plaintiff Farzana K., individually and as next friend of her minor son, S.K., seeks a preliminary injunction against Defendants Indiana Department of Education ("IDOE"), School Town of Munster, West Lake Special Education Cooperative, William Pfister, and Marlene Sledz, requiring them to provide S.K. with certain educational services, pursuant to 20 U.S.C. § 1415(j) of the Individuals with Disabilities Education Improvement Act of 2004. The Defendants oppose the motion and argue that S.K. is already receiving services that are consistent with the requirements of § 1415(j).

Also pending before the Court are the Defendants' Motion for Leave to File Additional Evidence in Support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction and the Defendants' Motion to Strike the Plaintiff's Reply. Having reviewed the parties' briefs

and heard their oral arguments, the Court denies all three motions for the reasons stated below.

**A. Background**

I.

Plaintiff's son, S.K., is a seventeen year-old student with autism spectrum disorder and language difficulties. As an autistic child, S.K. began receiving special education services at age two through early intervention services. Beginning at age three, he attended preschool programs at both the West Lake Special Education Cooperative and the School City of East Chicago. When S.K. was five years old, the School Town of Munster and the West Lake Special Education Cooperative ("School Defendants") determined that the least restrictive environment for S.K. was a residential facility.

S.K. began receiving educational services at a Melmark New England, Inc., residential facility in November 1997. In 2003, S.K. was still at Melmark, but in November of that year, he was scheduled to be discharged from the facility. As a result, on November 14, 2003, Plaintiff requested a due process hearing to determine S.K.'s educational placement. Plaintiff wanted to keep S.K. in a residential facility while the School Defendants thought that a school day program through the West Lake Cooperative without supported living services after school hours was sufficient.

On March 15, 2004, the evening before the due process hearing was scheduled to begin, Plaintiff and the School Defendants resolved their differences through a Settlement Agreement. According to the Settlement Agreement, S.K. would be placed at Heartspring residential facility in Kansas through December 31, 2004, after which he would begin the transition to a

community-based services program through the West Lake Cooperative.[1] As part of the community-based services program, S.K. would remain under professional care even during the off school hours. However, the terms of the Agreement were contingent upon the approval of the IDOE and Medicaid waiver funding.

Subsequently, the West Lake Cooperative learned that the Plaintiff had purchased a home in Schererville, Indiana, and had converted it into a duplex, planning to live on one side of the duplex while S.K. would live on the other. The West Lake Cooperative relayed this information to IDOE, which then refused to fund the community-based program as planned.

On July 13, 2004, a case conference was held to discuss S.K.'s transition from Heartspring to Indiana. The case conference committee determined that S.K.'s needs could be met in the West Lake Cooperative full time school program with a one-on-one behavioral support. After the meeting, the case conference committee again submitted to IDOE an application to fund a community-based services program for S.K.

On August 3, 2004, IDOE returned the application and asked the case conference committee to explain how the community-based services were relevant to providing S.K. with a free appropriate education. IDOE also wanted to know who would sign S.K.'s lease, who owned the property where he would be living, and who would be receiving the rent payments, start-up costs, housing deposits, and furnishings. Finally, IDOE questioned why an in-state residential facility was not considered where S.K. could attend school yet live close to his family.

---

[1] Community-based services means intensive special education and related services necessary to enable the student to remain in the community without resorting to residential placement or to return to the local community from a residential placement. 511 Ind. Admin. Code § 7-17-14 (2003) (effective June 12, 2002).

On August 19, 2004, the case conference committee reconvened. The Plaintiff wanted to talk more about her preference for S.K.'s placement in her duplex. Plaintiff reiterated her previous rejection of all Indiana in-state residential programs as inappropriate for S.K. The School Defendants recommended that S.K.'s current placement at Heartspring be extended through December 31, 2004, since no community-based placement for S.K. had been determined. Plaintiff agreed to the extension but only through October 31, 2004.

On September 15, 2004, the case conference committee met again to determine the appropriate placement and support for S.K.. The committee concluded that a consultant was needed to determine if an in-state residential facility would be appropriate, as suggested by the IDOE. The next day, on September 16, 2004, the School Defendants requested a due process hearing to determine the appropriate placement for S.K.

Richard Van Acker, Ed.D., was retained as a consultant to assist the committee in determining whether a residential facility was appropriate for S.K. Dr. Van Acker concluded that S.K.'s placement at Heartspring was too restrictive and recommended that he be put in a West Lake Cooperative program and live at home with the Plaintiff.

On October 14, 2004, the Plaintiff filed a motion for a temporary restraining order in this Court. Plaintiff claimed that the Defendants were depriving S.K. of a free and appropriate public education in the least restrictive environment and were violating the Settlement Agreement. Concurrent with her complaint, the Plaintiff asked for a preliminary injunction against the Defendants, requiring a community-based residential placement for S.K. The Court denied the motion for procedural reasons, and the Plaintiff refiled the motion on October 20, 2004. The Court denied that motion as well on October 27, 2004. The Court found that it lacked subject

matter jurisdiction over purely contractual claims relating to the Settlement Agreement and it lacked jurisdiction to hear the IDEA claims because the Plaintiff had not exhausted her administrative remedies.

Also on October 14, 2004, the Plaintiff petitioned the Independent Hearing Officer ("IHO") for a ruling that S.K.'s stay-put placement was community-supported living in Schererville, Indiana, with educational programming provided by the West Lake Cooperative. The Plaintiff reasoned that S.K. was entitled to this placement as agreed in the Settlement Agreement. She also argued that a continuation of the interim placement at Heartspring constituted a unilateral change in S.K.'s placement from the placement set forth in the Settlement Agreement.

On October 20, 2004, the IHO found that Heartspring was S.K.'s stay-put placement. (Admin Record at 299.)

On October 22, the School Defendants filed a motion with the IHO requesting permission for the West Lake Cooperative to secure S.K.'s placement at Heartspring beyond October 31, 2004, even without the Plaintiff's consent. The IHO granted the motion on October 26, and, on October 29, the IHO directed West Lake Cooperative to execute a contract with Heartspring.

On November 1, 2004, the Plaintiff filed a complaint in the Lake County Superior Court against the School Defendants and the individual defendants. The Plaintiff again claimed that the Defendants were depriving S.K. of fair and appropriate education in the least restrictive environment and were violating the Settlement Agreement. The Plaintiff also moved to enjoin the IHO from proceeding with the administrative hearing until the Lake County Court decided the Plaintiff's claims regarding the enforcement of the Settlement Agreement. The Plaintiff

claimed that the administrative process would keep S.K. at Heartspring indefinitely. On November 8, 2004, the Lake County Court denied the Plaintiff's request on the grounds that it lacked jurisdiction to enjoin the administrative proceedings. The court also found that the Plaintiff had failed to show that the School Defendants were in violation of the Settlement Agreement.

The due process hearing began on November 22 and lasted for nineteen days. Again, the Plaintiff argued that the Settlement Agreement required the School Defendants to financially support S.K.'s residential needs while he lived in the Plaintiff's duplex.

On December 9, the parties agreed to extend S.K.'s stay at Heartspring for ninety days because they were in the midst of a due process hearing and because they did not have a mutually agreed placement. (Admin. Record at 590.)

On March 7, 2005, the IHO found that the least restrictive educational placement for S.K. was in the West Lake Cooperative at the Grimmer Middle School autism structured program. The IHO ordered S.K. moved from Heartspring to the West Lake public school program, where he would live with the Plaintiff during the off school hours. The IHO did not require supported living services for S.K. during the hours when he was not in school. The IHO's order stated that "[t]he September 15, 2004, [Idividualized Education Program] represents [S.K.'s] present levels of performance and shall be integrated into the Grimmer classroom." (March 7, 2007, IHO Decision at 37.) Three weeks later, on March 28, 2005, the IHO clarified that the September 15, 2004, Individualized Education Program ("IEP") did not need to be amended through a case conference committee, as he had amended this IEP in the March 7, 2005, decision.

On April 1, 2005, the School Defendants submitted to the IHO an IEP outlining West

6

Lake's educational services that they believed complied with the IHO's Order. Three days later, on April 4, the IHO approved the IEP.

II.

In April 2005, the Plaintiff petitioned the Board of Special Education Appeals ("BSEA") to overturn the IHO's denial of after-school services for S.K. in a community-based living arrangement. The BSEA upheld the IHO's placement order.

III.

On July 8, 2005, the Plaintiff filed a complaint in this Court. On December 20, 2005, the Court dismissed all but one of the Plaintiff's claims: the lack of interagency agreement claim was allowed to proceed against IDOE. On December 30, 2005, the Plaintiff filed her initial motion to enforce the stay-put placement pursuant to the automatic stay provisions of 20 U.S.C. § 1415(j), requesting that S.K.'s then-present placement at Heartspring be maintained through the appeal to the Seventh Circuit.

On February 24, 2006, the Court entered final judgment regarding the Plaintiff's dismissed claims, paving a way for the Plaintiff's notice of appeal on March 1, 2006. Also on February 24, 2006, the Court denied the Plaintiff's initial motion for a stay-put placement, finding that the stay-put provision does not apply beyond the district court proceedings.

On January 26, 2007, the Seventh Circuit vacated the Court's judgment and remanded the case. *Farzana K. v. Ind. Dep't of Ed.*, 473 F.3d 703 (7th Cir. 2007).

IV.

Meanwhile, on February 7, 2006, Heartspring terminated its contract with the IDOE for S.K.'s services and gave notice that S.K. had to leave the facility by March 20, 2006. On April 29, 2006, S.K. was discharged from Heartspring, and on May 1, 2006, he began participating in programs at West Lake's Grimmer Middle School consistent with the educational services outlined in the April 4, 2005, IHO-Approved IEP. At the end of the school day, S.K. lived with the Plaintiff and did not receive supported living services during the off school hours.

V.

On May 31, 2007, an annual case conference was held to discuss S.K.'s progress and to develop an IEP to address his needs for the 2007 summer and the following school year. Until this time, Heartspring's former goals were being implemented and had not been updated since the April 4, 2005, IHO-Approved IEP. The proposed IEP was mostly a continuation of the program that had been in place since May 1, 2006, except that S.K. no longer had a one-on-one behavioral support aid. No attorneys were present during the May 31, 2007, case conference. At the conference, the Plaintiff focused on getting S.K. supported living services in her home. The Plaintiff had to leave the conference early, and asked that the goals the conference committee sets for S.K. be mailed to her.

On June 6, 2007, Joan Machucca sent the Plaintiff a letter enclosing a copy of the May 31 case conference information. Machucca noted in the letter that the Plaintiff's permission was necessary to continue S.K.'s educational services.

On June 12, 2007, the Plaintiff returned the IEP form indicating that she disagreed with the recommendations of the case conference committee. (Machucca Aff. ¶ 11.) Machucca responded to the Plaintiff by a letter dated July 20, again explaining that the May 31 IEP required her signed consent, if the school services were to be administered. Machucca advised the Plaintiff that if she disagreed with the proposed IEP, she could request a case conference. (Machucca Aff. ¶ 12.) Four days later, on July 24, the Plaintiff signed the form but indicated that she disagreed with the recommendations of the case conference committee and "need[ed] further discussion with the team." (*Id*. ¶ 13.)

Eventually, on August 17, 2007, the Plaintiff signed her consent to the May 31 IEP, stating that "I understand and AGREE 'for now' with the recommendations of the Case Conference Committee." She also wrote in that she "would like to discuss with team in an [ . . . illegible . . . ] for now and to start his new year program." This IEP was reviewed a year later at a case conference on June 4, 2008. The Plaintiff did not attend the case conference and no modifications to the IEP were proposed. The committee sent a copy of the case conference materials to the Plaintiff, who did not submit a dissenting opinion and did not request an additional case conference.

From May 1, 2006, until the Plaintiff filed the current motion for a preliminary injunction, S.K. has been in a structured autism program in the West Lake Cooperative. He returns to the Plaintiff's home at the end of school day where he does not receive any supported living services.

Overall, in her appeal to this Court, the Plaintiff seeks to overturn the IHO's March 7, 2005, finding that the West Lake Cooperative, without community-based services, was the

9

proper placement for S.K., and the June 1, 2005, BSEA decision upholding the IHO.

**B. Discussion**

**(1)** *S.K.'s Stay-put Placement*

The statute in question, the Individuals with Disability Education Act, provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). "The purpose of the stay put provision is to give the child's parents the choice of keeping the child in his existing program until their dispute with the school authorities is resolved." *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Ill. State Bd. of Educ*, 79 F.3d 654, 659 (7th Cir. 1996). The stay-put provision substitutes for the traditional preliminary injunction requirements. *See Casey K. ex rel. Norman K. v. St. Anne Community High School Dist. No.*, 302 400 F.3d 508, 511 (7th Cir. 2005) ("The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy." (citations omitted)). "The effect of this interpretation is to make violation of the stay-put provision punishable by contempt, but it is also . . . to enable the district judge to exercise equitable discretion with respect to the duration of the stay." *Id*.

In her motion for a preliminary injunction to enforce the stay-put placement, the Plaintiff asks the Court to enter an automatic statutory injunction under 20 U.S.C. § 1415(j) for S.K.'s educational placement as provided in the August 19, 2004, IEP, which set Heartspring residential facility as the appropriate placement for S.K. The Plaintiff maintains that the August 19, 2004,

IEP is the last uncontested IEP and that its terms should be controlling while the case is being litigated. The Plaintiff also notes that on both October 17, 2004, and October 20, 2004, the IHO determined that the August 19, 2004, IEP constituted the stay-put placement.

The Plaintiff asserts that, but for the Court's erroneously dismissal of the claims against the School Defendants, which extinguished the automatic stay at Heartspring, S.K. would have remained there as a matter of course. Accordingly, the Plaintiff argues that, since the Seventh Circuit Court of Appeals remanded the case, the stay-put provision should be reinstated as well.

The Defendants argue that, by filing her stay-put motion three years after the original stay-put placement expired with the dismissal of the Plaintiff's Complaint against the School Defendants, and twenty-five months after the Court of Appeals remanded the case, the Plaintiff has waived and abandoned her right to reinstate the original stay-put placement. The Defendants submit that the Plaintiff's request for S.K.'s placement at a residential facility contradicts the intent of § 1415(j) because S.K.'s status quo since May 1, 2006, has been at a structured autism program in the West Lake Cooperative while living at home with the Plaintiff. The Defendants also contend that the Plaintiff consented to the August 2007 IEP, which set forth the currently implemented placement. In addition, the Defendants insist that the equitable doctrine of laches bars the Plaintiff's attempt to reinstate the stay-put placement at a residential facility and assert that the Plaintiff's motion for a preliminary restraining order is now controlled by Federal Rule of Civil Procedure 65 rather than the automatic provisions of § 1415(j).

While this is not a clear cut case, the Court does not believe that reinstating S.K.'s placement at a residential facility is warranted here, as that was not S.K.'s "then-current educational placement" at the time the motion for a preliminary injunction was filed. The

Plaintiff maintains that, since the Court dismissed her claims for lack of jurisdiction on February 24, 2006, it made no decision on the merits as to S.K.'s appropriate placement and, since the case has been remanded, the previous stay-put placement should be reinstated. In effect, the Plaintiff asks to disregard the time between February 4, 2006—when her initial motion for stay-put was denied—and the date of the current motion, and proceed as if it still were February 24, 2006. However, this approach is unsuitable.

The Court's dismissal of the Plaintiff's claims in 2006 had the effect of extinguishing S.K.'s stay-put placement at Heartspring. Accordingly, the Plaintiff could have reinstated that placement only if (1) nothing had changed while the appeal was pending and (2) the Plaintiff's motion for reinstatement was filed promptly after the remand. Instead, the Plaintiff delayed her motion for twenty five months, making her argument that the Court should return the status quo of February 24, 2006, unconvincing. Moreover, on August 17, 2007, the Plaintiff signed off on the case conference committee's recommendation that S.K. stay in essentially the same placement he had been in since May 1, 2006, when he was transferred from Heartspring to West Lake Cooperative, where he attended Grimmer Middle School and lived at home with the Plaintiff, without additional services, during off school hours.

The Plaintiff urges the Court to characterize her assent to the committee's recommendation as conditional and temporary because she inserted the words "for now" along with her signature. However, such an interpretation of the Plaintiff's insertion is too broad. Because IEPs are periodically reviewed, the inclusion of "for now" is vague at best, so as to override the explicit statements that the Plaintiff endorsed: "I understand and AGREE [for now] with the recommendation of the case Conference Committee." (Def.'s Ex. K at 3.) But most

importantly, whatever "for now" may mean, it is referring to S.K.'s placement at West Lake Cooperative versus community-based supported living services that the Plaintiff believes constitute free appropriate public education, rather than S.K.'s placement at West Lake Cooperative versus a residential facility placement similar to Heartspring, which was no longer an issue at that time. Therefore, when the Plaintiff filed her motion for a preliminary injunction, S.K's "then-current educational placement" was the placement with the West Lake Cooperative. Such an interpretation of the facts before the Court is consistent with the purpose of § 1415(j), which is to maintain a child's status quo until the parent's dispute with the school is over.

**(2)** *Other Motions*

The Defendants have moved for leave to submit evidence relating to S.K.'s conditions at his current placement. The Defendants also moved to strike any evidence presented by the Plaintiff regarding S.K.'s conditions at the current placement.

The additional evidence about S.K's current conditions has no bearing on the stay-put decision because the stay-put placement is controlled by the status quo at the time of the parties' disagreement, not the actual conditions of the student. Accordingly, the motion for leave is denied as irrelevant and the motion to strike is denied as moot because the Court does not consider irrelevant evidence in any case. S.K's current conditions would be relevant only if the Plaintiff decides to move for a preliminary injunction under the traditional standards for such motions.

**Conclusion**

The Court denies the Plaintiff's Motion for a Preliminary Injunction (DE 124), denies the Defendants' Motion for Leave to File Additional Evidence (DE 136), and denies the Defendants' Motion to Strike (DE 139).

SO ORDERED on October 30, 2009.

                                            s/ Joseph S. Van Bokkelen
                                            JOSEPH S. VAN BOKKELEN
                                            UNITED STATES DISTRICT JUDGE